# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **LOIS G. HIBBITTS,** ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 2:15cv00026 |
| ) | |
| **CAROLYN W. COLVIN,** ) | **MEMORANDUM OPINION** |
| Acting Commissioner of ) | |
| Social Security, ) | |
| Defendant ) | By: Pamela Meade Sargent |
| ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Lois G. Hibbitts, ("Hibbitts"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2011). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by transfer based on consent of the parties pursuant to 28 U.S.C. § 636(c)(1). Oral argument has not been requested; therefore, the matter is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "'substantial evidence.'"'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Hibbitts protectively filed an application for DIB on July 16, 2012, alleging disability as of June 29, 2012, due to severe scoliosis; arthritis; hypothyroidism; fibromyalgia; depression; swelling of the feet; borderline diabetic; and back and hip pain. (Record, ("R."), at 151-52, 165, 169, 206.) The claim was denied initially and on reconsideration. (R. at 79-81, 85-87, 90-94, 96-98.) Hibbitts then requested a hearing before an administrative law judge, ("ALJ"). (R. at 99.) A hearing was held on March 10, 2014, at which Hibbitts was represented by counsel. (R. at 26-51.)

By decision dated May 28, 2014, the ALJ denied Hibbitts's claim. (R. at 14-21.) The ALJ found that Hibbitts meets the nondisability insured status requirements of the Act for DIB purposes through December 31, 2016. (R. at 16.) The ALJ also found that Hibbitts had not engaged in substantial gainful activity since June 29, 2012, her alleged onset date.[1] (R. at 16.) The ALJ found that the medical evidence established that Hibbitts suffered from severe impairments,

---

[1] Therefore, Hibbitts must show that she became disabled between June 29, 2012, the alleged onset date, and May 28, 2014, the date of the ALJ's decision, in order to be entitled to DIB benefits.

namely bilateral hip osteoarthritis and status-post left hip replacement; scoliosis and degenerative disc disease; diabetes mellitus; and obesity, but he found that Hibbitts did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16-17.) The ALJ found that Hibbitts had the residual functional capacity to perform sedentary work[2] that allowed the opportunity to alternate between sitting and standing without moving away from her station; that did not require more than occasional stooping, crouching and kneeling; and that allowed her to be absent from work one day a month. (R. at 17.) The ALJ found that Hibbitts was able to perform her past relevant work as a school secretary. (R. at 20.) Thus, the ALJ found that Hibbitts was not under a disability as defined by the Act, and was not eligible for DIB benefits. (R. at 21.) *See* 20 C.F.R. § 404.1520(f) (2015).

After the ALJ issued his decision, Hibbitts pursued her administrative appeals, (R. at 7-9), but the Appeals Council denied her request for review. (R. at 1-5.) Hibbitts then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2015). The case is before this court on Hibbitts's motion for summary judgment filed June 13, 2016, and the Commissioner's motion for summary judgment filed July 14, 2016.

---

[2] Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties. Jobs are sedentary if walking or standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 404.1567(a) (2015).

## II. Facts

Hibbitts was born in 1955, (R. at 30, 151), which, at the time of the ALJ's decision, classified her as a "person of advanced age" under 20 C.F.R. § 404.1563(e). Hibbitts has a high school education and past work experience as a school secretary and library assistant. (R. at 30-31, 170.) Hibbitts stated that she could sit up to 25 minutes without interruption. (R. at 39.) She stated that she occasionally used a cane. (R. at 41.) Hibbitts stated that "frustration" was more of a problem for her than depression. (R. at 45.) She stated that she took Aleve and used a heating pad and TENS unit to manage her pain. (R. at 46.) Hibbitts stated that she had been offered narcotic pain medication, but refused to take it because of her fear of addiction. (R. at 45.)

Vocational expert, Asheley Wells, also testified at Hibbitts's hearing. (R. at 35, 48-49.) Wells classified Hibbitts's work as a library assistant as light[3] and skilled and her work as a school secretary as sedentary and skilled. (R. at 35.) She stated that the job as school secretary customarily allowed for some alternating between sitting and standing. (R. at 48.) Wells stated that the need to engage in no more than occasional stooping, crouching or kneeling would not impact the ability to do the job. (R. at 49.)

In rendering his decision, the ALJ reviewed records from Dr. Andrew

---

[3] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2015).

-4-

Bockner, M.D., a state agency physician; Dr. Robert McGuffin, M.D., a state agency physician; Alan D. Entin, Ph.D., a state agency psychologist; Dr. Robert Keeley, M.D., a state agency physician; Dr. Dennis Aguirre, M.D.; Dr. Danny A. Mullins, M.D., an orthopaedist; Dr. Sudama S. Tholpady, M.D.; and Dr. Ashley Bevins, D.O.

On November 2, 2007, Hibbitts saw Dr. Danny A. Mullins, M.D., with complaints of back and left hip pain. (R. at 260, 286.) Dr. Mullins reported that Hibbitts had arthritis of the hip; arthritic changes with scoliosis of the lumbosacral spine; and tenderness over the greater trochanter. (R. at 286.) Dr. Mullins administered a trochanter injection and advised Hibbitts to use a cane. (R. at 286.)

On February 4, 2008, Hibbitts explained that she previously had been diagnosed with fibromyalgia, and Dr. Dennis Aguirre, M.D., assessed 10 of 18 positive trigger points. (R. at 229-33.) Hibbitts reported low back pain with occasional left hip pain and numbness and tingling in her right leg, after standing too long. (R. at 229.) Hibbitts reported that her functional impairment was moderate, and when present, it interfered with some of her daily activities and ability to sleep. (R. at 229.) Dr. Aguirre diagnosed massive obesity; hypothyroidism; left hip and leg pain; and severe degenerative disease. (R. at 233.) On February 21, 2008, Dr. Aguirre administered an epidural injection for Hibbitts's lumbar radiculopathy. (R. at 228.)

On April 18, 2008, Hibbitts reported to Dr. Mullins that the previous trochanteric injection did not give her much relief. (R. at 282.) She also reported

that the epidural injection gave her some relief, but the pain slowly returned. (R. at 282.) Hibbitts declined referral to a spine surgeon, stating that she believed one of her issues was her weight, with which Dr. Mullins agreed. (R. at 282.) On February 25, 2009, an MRI of Hibbitts's left hip showed subchondral cysts in the left hip bone socket consistent with osteoarthritic changes and a trace amount of fluid in the trochanteric bursa on the left. (R. at 243.)

On March 6, 2009, Dr. Sudama S. Tholpady, M.D., reported that Hibbitts had impaired ambulation because of severe arthritis of the left hip. (R. at 236-37.) Hibbitts reported that her leg edema was fairly stable on medication. (R. at 236.) Dr. Tholpady reported that Hibbitts limped on the left side; she had no joint swelling; she had some tenderness over the right ankle; she had normal muscle power; she had no abnormal movements; and her gait was impaired due to joint pain. (R. at 236.) Dr. Tholpady diagnosed severe hyperlipidemia due to morbid obesity; elevated liver enzymes, most likely secondary to nonalcoholic fatty liver disease; stable idiopathic leg edema; history of hypokalemia; well-controlled hypothyroidism; and severe osteoarthritis of the left hip, which may require joint replacement. (R. at 236.)

On April 6, 2009, Dr. Mullins performed a left total hip replacement. (R. at 245-50.) Subsequent visits show that Hibbitts was doing very well following her hip replacement. (R. at 271, 273-77.) On July 29, 2009, Dr. Mullins authorized Hibbitts to return to work as of August 6, 2009. (R. at 266.) On April 21, 2010, Hibbitts complained of low back pain with radicular symptoms into her right leg. (R. at 273.) Dr. Mullins reported that Hibbitts was overall doing quite well. (R. at

273.) Hibbitts stated that she was considering applying for disability. (R. at 273.) Dr. Mullins stated that, "I think that is probably not unreasonable given the severity of her back problems in combination with her hips." (R. at 273.) On September 24, 2010, Hibbitts complained of back pain that radiated into the right paralumbar region. (R. at 272.) Dr. Mullins reported that Hibbitts had some tenderness along the right paralumbar region of her back, and she had normal strength and sensation. (R. at 271.) X-rays showed spinal stenosis most probable at the L3-L4 and L4-L5 levels. (R. at 271.) On October 8, 2010, x-rays of Hibbitts's lumbar spine showed prominent dextroscoliosis centered at the L2-L3 level and degenerative disc changes at the L3-L4 and L4-L5 levels without neural impingement. (R. at 261-62.) Also, that same day, an MRI of Hibbitts's thoracic spine was normal. (R. at 263-64.) On June 9, 2011, Dr. Mullins reported that Hibbitts was doing well, and she had minimal complaints. (R. at 252.)

On January 13, 2012, Hibbitts saw Dr. Ashley Bevins, D.O., for complaints of upper abdomen pain and soreness due to fibromyalgia. (R. at 298-300.) Dr. Bevins found Hibbitts's gait normal; her skin pigmentation was normal with no rash, though she had some scaling and erythema on her right forearm; she exhibited no joint swelling, nor clubbing or cyanosis in her fingernails; her psychiatric state was oriented; and her cranial nerves were intact. (R. at 299.) Dr. Bevins diagnosed fibromyalgia; hyperglycemia; hyperlipidemia; arthritis; fatty liver; and thyroid disease. (R. at 300.) On May 4, 2012, Hibbitts reported that she felt better after losing 20 pounds. (R. at 295-97.) Hibbitts's physical examination was normal. (R. at 296.) Dr. Bevins diagnosed hyperlipidemia, fatty liver and hyperglycemia. (R. at 296.) On July 25, 2012, Hibbitts reported to Dr. Mullins that

-7-

she was doing quite well. (R. at 251.) X-rays of Hibbitts's left hip revealed excellent position of the components, but her right hip showed some mild to moderate degenerative joint disease. (R. at 251.) On August 6, 2012, Dr. Bevins saw Hibbitts for reevaluation of hyperlipidemia. (R. at 291-94.) Dr. Bevins found Hibbitts's gait normal; her skin pigmentation was normal with no rash; she exhibited no joint swelling, nor clubbing or cyanosis in her fingernails; her psychiatric state was oriented; and her cranial nerves were intact. (R. at 292-93.) Hibbitts reported that Aleve helped her back pain and scoliosis. (R. at 291.) Dr. Bevins diagnosed hyperlipidemia, hyperglycemia and scoliosis. (R. at 293.) A DEXA bone density study was performed on August 9, 2012, which rendered normal results. (R. at 302-03, 320.)

On September 25, 2012, Dr. Andrew Bockner, M.D., a state agency physician, opined that Hibbitts did not suffer from a mental impairment. (R. at 56.)

On September 25, 2012, Dr. Robert McGuffin, M.D., a state agency physician, opined that Hibbitts had the residual functional capacity to perform light work. (R. at 57-59.) He reported that Hibbitts could frequently climb ramps and stairs; balance; stoop; kneel; and crouch, and occasionally climb ladders, ropes and scaffolds and crawl. (R. at 58.) No manipulative, visual or communicative limitations were noted. (R. at 58.) Dr. McGuffin opined that Hibbitts should avoid working around concentrated exposure to vibration and hazards, such as machinery and heights. (R. at 58.)

On April 22, 2013, Alan D. Entin, Ph.D., a state agency psychologist,

reported that Hibbitts did not suffer from a mental impairment. (R. at 69.)

On April 26, 2013, Dr. Robert Keeley, M.D., a state agency physician, opined that Hibbitts had the residual functional capacity to perform light work. (R. at 70-71.) He reported that Hibbitts could occasionally climb; stoop; kneel; crouch; and crawl. (R. at 71.) No manipulative, visual, communicative or environmental limitations were noted. (R. at 71.)

On May 10, 2013, Hibbitts reported to Dr. Bevins that, in connection with her arthritis and back pain, she rested when it was worse, and she was trying to walk on a treadmill. (R. at 349.) She reported that Dr. Mullins recommended only conservative treatment, and she was using Aleve for her pain. (R. at 349.) Dr. Bevins found Hibbitts's gait normal; her skin pigmentation was normal with no rash; she exhibited no joint swelling, nor clubbing or cyanosis in her fingernails; her psychiatric state was oriented; and her cranial nerves were intact. (R. at 351.)

On June 12, 2013, while Hibbitts reported to Dr. Mullins that she was doing "wonderfully" with her hip, she continued to complain of severe low back pain. (R. at 379.) Dr. Mullins noted that Hibbitts's back pain was her primary limiting factor. (R. at 379.) Clinical testing revealed equal leg lengths; an x-ray showed no fracture, dislocation or misalignment in her hips; and Hibbitts had no pain on internal or external rotation of her hips. (R. at 380.) On July 11, 2013, Hibbitts reported worsening back pain, stating that she experienced back pain within 10 minutes of walking and that she had been told that her only option to address this was surgery. (R. at 345, 348.) She also described snoring and feeling tired all day.

(R. at 345.) Dr. Bevins found Hibbitts's gait normal; her skin pigmentation was normal with no rash; she exhibited no joint swelling, nor clubbing or cyanosis in her fingernails; her psychiatric state was oriented; and her cranial nerves were intact. (R. at 347.)

On October 9, 2013, Hibbitts reported having more energy and sleeping better since using continuous positive airway pressure, ("CPAP"), therapy. (R. at 336.) Dr. Bevins found Hibbitts's gait normal; her skin pigmentation was normal with no rash; she exhibited no joint swelling, nor clubbing or cyanosis in her fingernails; her psychiatric state was oriented; and her cranial nerves were intact. (R. at 338.) Hibbitts was diagnosed with obstructive sleep apnea. (R. at 339.) On January 20, 2014, it was noted that Hibbitts's cholesterol improved with medication. (R. at 335.) Hibbitts reported swelling in her legs with walking. (R. at 335.) Dr. Bevins diagnosed diabetes mellitus II; edema in the lower extremities; hyperlipidemia; and vitamin D deficiency. (R. at 335.)

On March 12, 2014, Hibbitts reported doing quite well with her hip; however, she reported a great deal of discomfort with her lumbar spine. (R. at 387.) Dr. Mullins noted that Hibbitts did not have a need for an assistive device for ambulation. (R. at 387.) Hibbitts's neurovascular examination was grossly intact. (R. at 388.) Hip x-rays showed no fracture or dislocation, and her joint spaces were well-maintained. (R. at 388.) Dr. Mullins opined that Hibbitts was doing well, and that he would see her in one year. (R. at 388.) Also, that same day, Dr. Mullins completed a medical assessment, finding that Hibbitts could occasionally lift and carry items weighing up to five pounds and frequently lift and carry items

weighing up to three pounds. (R. at 383-85.) He opined that Hibbitts could stand, walk and/or sit a total of two hours in an eight-hour workday and that she could do so for up to 20 minutes without interruption. (R. at 383-84.) Dr. Mullins opined that Hibbitts could never climb, stoop, kneel, balance, crouch or crawl. (R. at 384.) He found that Hibbitts was limited in her ability to reach, to push and to pull. (R. at 384.) Dr. Mullins opined that Hibbitts would be restricted from working around heights and moving machinery. (R. at 385.) He reported that Hibbitts would be absent from work more than two days a month. (R. at 385.)

### III. *Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2015); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2015).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by

substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(c), if he sufficiently explains his rationale and if the record supports his findings.

Hibbitts argues that the ALJ erred by failing to adhere to the treating physician rule and give controlling weight to Dr. Mullins's opinions. (Plaintiff's Memorandum In Support Of Her Motion For Summary Judgment, ("Plaintiff's Brief"), at 4-5.) Based on my review of the record, I find this argument unpersuasive. The ALJ must generally give more weight to the opinion of a treating physician because that physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 404.1527(c)(2) (2015). However, "[c]ircuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig v. Chater*, 76

F.3d 585, 590 (4th Cir. 1996) (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam)).  In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

In March 2014, Dr. Mullins opined that Hibbitts could occasionally lift and carry items weighing up to five pounds and frequently lift and carry items weighing up to three pounds. (R. at 383-85.) He opined that Hibbitts could stand, walk and/or sit a total of two hours in an eight-hour workday and that she could do so for up to 20 minutes without interruption. (R. at 383-84.) Dr. Mullins opined that Hibbitts could never climb, stoop, kneel, balance, crouch or crawl. (R. at 384.) He found that Hibbitts was limited in her ability to reach, to push and to pull. (R. at 384.) Dr. Mullins opined that Hibbitts would be restricted from working around heights and moving machinery. (R. at 385.) He reported that Hibbitts would be absent from work more than two days a month. (R. at 385.) The ALJ noted that he was giving this opinion little weight because it was not supported by Dr. Mullins's own treatment notes or the overall medical evidence. (R. at 20.)

Following Hibbitts's April 2009 left hip surgery, she reported doing very well, with good relief of her symptoms. (R. at 245, 271-77.) A July 25, 2012, right hip x-ray showed mild to moderate degenerative joint disease; however, Hibbitts later reported that Aleve helped relieve her symptoms. (R. at 251, 291.) Although Hibbitts reported fatigue, she received a CPAP machine and reported feeling much better. (R. at 336, 340.) Dr. Bevins repeatedly found Hibbitts's gait normal, and she exhibited no joint swelling. (R. at 292, 338, 342, 347, 351.) In June 2013, Dr.

-13-

Mullins found equal leg lengths; he reported that an x-ray showed no fracture, dislocation or misalignment in her hips; and Hibbitts reportedly had no pain on internal or external rotation of her hips. (R. at 380.) In March 2014, Hibbitts reported continued lumbar spine discomfort, but she required no assistive device for ambulation; her neurovascular function was intact; and her joint spaces were well-maintained. (R. at 387-88.)

While the state agency physicians found that Hibbitts had the residual functional capacity to perform light work, the ALJ gave Hibbitts the benefit of the doubt and declined to accord great weight to these opinions. (R. at 20.) In limiting Hibbitts to sedentary work, the ALJ limited her to work that provided an option to occasionally alternate sitting and standing. (R. at 17.) The vocational expert clarified that the sedentary school secretary job, as customarily performed, was consistent with these restrictions, as well as other postural limitations the ALJ imposed. (R. at 17, 48-49.)

In addition, the ALJ found that Hibbitts's activities of daily living also supported his finding. (R. at 19-20.) The record shows that Hibbitts drove; shopped; performed household chores, such as dusting, laundry and preparing meals; used the Internet; and attended church. (R. at 40-41, 198-200.) Hibbitts also worked, at least at times, as a school secretary following her alleged onset date. (R. at 31-33.) Also, Hibbitts repeatedly reported that Aleve relieved her symptoms. (R. at 46, 291, 349.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986). Based on this, I find that the ALJ properly weighed the medical evidence

and that substantial evidence exists to support the ALJ's finding with regard to Hibbitts's residual functional capacity.

Based on the above reasoning, I find that substantial evidence exists in the record to support the ALJ's finding that Hibbitts was not disabled. An appropriate Order and Judgment will be entered.

ENTERED: October 31, 2016.

s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE